**UNITED STATES DISTICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | | |
|---|---|---|
| EDWARD HOWARD COOPER JR.<br><br>Plaintiff,<br><br>v.<br><br>BURTON, et al.<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Cause No. 1:25-CV-407-HAB |

**OPINION AND ORDER**

This case arises from an encounter between Plaintiff Edward Howard Cooper Jr. and Defendants Jeffrey Burton and Stevan Schulien, Officers with the Fort Wayne Police Department. Plaintiff asserts First and Fourth Amendment Constitutional claims against Defendants pursuant to 42 U.S.C § 1983. Defendants filed a Motion for Summary Judgment on January 28, 2026. (ECF No. 15). The motion is fully briefed and ripe for consideration. (ECF Nos. 16-17, 21-24).

## I. BACKGROUND[1]

On June 12, 2024, Defendants Stevan Schulien and Jeffrey Burton, both Patrol Officers with the Fort Wayne Police Department, were on duty. (Defs. SOMF ¶¶ 2, 30 (ECF No. 17)). While Defendants were patrolling, dispatch advised them that a caller had reported that a male on a bicycle had swung a backpack in the direction of a small girl on an electric scooter while heading west on Illinois Road from Hadley Road.[2] (*Id.* ¶ 312). The call taker wrote the following words—

[1] Citations for the facts in this section are primarily from the Statements of Material Facts filed by both parties. Where any facts are disputed, the Court notes the dispute.

[2] Plaintiff denies ever swinging a backpack in the direction of his daughter. (Pl. SOMF ¶¶ 32-33). The Court finds this dispute immaterial to its analysis of Plaintiff's claims.

displayed to Defendants on the dispatch system—as he listened to the witness, Keith High: "LATES 20s MW WHT SHIRT ON BICYCLE RIPPED BAG OFF BACK OF FW WHT SHIRT ON ELECTRIC SCOOTER. SAYS IT WAS REALLY AGGRESSIVE AND ALMOST KNOCKED FEMALE OVER." (*Id.* ¶ 32).

Defendants located and approached the subjects of the dispatch report—Plaintiff and his daughter. (*Id.* ¶ 6). The parties describe the initial encounter differently. According to Defendants, Plaintiff "appeared agitated and was slamming [his] bicycle around." (*Id.*). Plaintiff disputes this characterization, stating he was removing rope from the bike and talking to his daughter when the officers approached. (Pl. SOMF ¶ 6 (ECF No. 21)). He acknowledges that he was frustrated because his bike had broken down, making him late for a doctor's appointment, but denies that he was aggressive or angry with his daughter. (*Id.* ¶¶ 3, 6).

Defendants provided body camera video recordings from both Defendants, giving the Court a clearer picture of the encounter. *See* Schulien Video, Barton Video (ECF No. 14). When Defendants first approached Plaintiff and his daughter, they said hello and asked if everything was alright. (Schulien Video at 1:14-1:24). Plaintiff responded "yep" and continued to work on fixing his bicycle. *Id.* Defendants then told Plaintiff that they had received calls from people who were concerned after seeing Plaintiff "grab a bag off of [his daughter] pretty aggressively." (*Id.* at 1:24-1:33). Plaintiff told Defendants he had thrown the bag on the ground, and that the girl with him was his daughter. (*Id.*). The tension escalated, with Plaintiff telling Defendants to "leave him alone," and Defendants explaining they had been called to investigate the situation. (*Id.* at 1:33-2:32).

After a little over a minute of conversation, Defendants asked Plaintiff if he had any identification on him. (*Id.* at 2:32). Plaintiff ignored the request and began to walk away as

Defendants told him to stop and continued to ask for identification. (*Id.* at 2:33-3:05). Plaintiff repeatedly stated that he had done nothing wrong, while Defendants explained that they were investigating him. (*Id.*) After about a minute of this, Plaintiff told Defendants his name was "Ed" but declined to provide any further information. (*Id.* at 3:17-3:39). Plaintiff then began filming Defendants with his cellphone as they continued to request his identification and explain that he was under investigation.[3] (*Id.* at 3:40-4:56).

Defendants grabbed Plaintiff, pulled him to the ground, and handcuffed him. (*Id.* at 4:55-5:48). They then questioned Plaintiff, searched his pockets, put him in the squad car, and searched his backpack. (Defs. SOMF ¶¶ 20-21). Plaintiff was arrested for "Refusal to Identify and Resisting Law Enforcement." (*Id.* ¶ 24).

## II. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial responsibility of informing the district court of the basis of its motion and identifying those portions of designated evidence that demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). After "a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S.242, 250 (1986) (quotation marks and citation omitted).

[3] In his response to Defendants' Statement of Material Facts, and in his Affidavit, Plaintiff states that Defendants only asked for his identification once. (Pl. SOMF ¶ 36, Pl. Aff. ¶ 23). He also denies that Burton told him he was under investigation. (Pl. SOMF ¶ 37, Pl. Aff. ¶ 24). Both of these objections are clearly contradicted by the video evidence, so the Court will not consider them. *See Scott v. Harris,* 550 U.S. 372 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.).

A factual issue is material only if resolving it might change the outcome of the case under the governing law. *See Clifton v. Schafer*, 969 F.2d 278, 281 (7th Cir. 1992). A factual issue is genuine only if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party on the evidence presented. *See Anderson*, 477 U.S. at 248. In deciding a motion for summary judgment, the court "may not 'assess the credibility of witnesses, choose between competing reasonable inferences, or balance the relative weight of conflicting evidence.'" *Bassett v. I.C. Sys., Inc.*, 715 F. Supp. 2d 803, 808 (N.D. Ill. 2010) (quoting *Stokes v.Bd. of Educ. of the City of Chi.*, 599 F.3d 617, 619 (7th Cir. 2010)). Instead, it must view all the evidence in the record in the light most favorable to the non-moving party and resolve all factual disputes in favor of the non-moving party. *See Anderson*, 477 U.S. at 255.

## III. ANALYSIS

Plaintiff brings his Constitutional claims pursuant 42 U.S.C. § 1983, which provides a cause of action against "[e]very person who, under color of [law] ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." He alleges that Defendants violated his rights under the Fourth and First Amendments.[4]

[4] As government officials, Defendants assert that they are entitled to qualified immunity, which "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Doe v. Gray*, 75 F.4th 710, 716 (7th Cir. 2023) (quoting *Kemp v. Liebel*, 877 F.3d 346, 350 (7th Cir. 2017)). Courts assess claims of qualified immunity under a two-part test. *Kemp*, 877 F.3d at 350. The plaintiff bears the burden of showing that (1) a statutory or constitutional right was violated, and (2) that right was clearly established at the time of the relevant conduct. *Id.* Because the Court finds that Defendants did not violate Plaintiff's statutory or constitutional rights, regardless of whether they were "clearly established" at the time of the relevant conduct, it need not address this defense.

**A. Fourth Amendment**

Plaintiff asserts claims under the Fourth Amendment for unlawful arrest and for excessive force. Defendants move for summary judgment as to both claims.

**1. Unlawful Arrest**

The Fourth Amendment protects against "unreasonable searches and seizures." U.S. Const. amend. VI. "Stopping someone is generally considered a seizure and ordinarily requires probable cause to be reasonable." *United States v. Reedy*, 989 F.3d 548, 552 (7th Cir. 2021). In *Terry v. Ohio*, 392 U.S. 1 (1968), the Supreme Court recognized an exception to this general principle. Under *Terry*, a police officer can stop and briefly detain a person for investigative purposes without violating the Fourth Amendment if the officer has reasonable suspicion supported by articulable facts that criminal activity is afoot. *Id.* at 21-22.

Defendants argue that summary judgment in their favor is warranted on Plaintiff's unlawful arrest claim because they had both reasonable suspicion for an investigatory stop and probable cause for an arrest. (ECF No. 16 at 3-7). With respect to reasonable suspicion, Plaintiff argues in his response brief that "there was no reasonable suspicion that Plaintiff had committed a crime, an infraction, or an ordinance violation" when officers arrived on the scene. (ECF No. 22 at 3). He also argues that there was no probable cause for his eventual arrest. (*Id.* at 3-4).

The Court is mindful that "[t]he line between a lawful *Terry* stop and an unlawful arrest is not bright." *United States v. Askew*, 403 F.3d 496, 507 (7th Cir. 2005). "Officer/citizen interactions are not static events, but often progress through the various categories of encounters as the intrusiveness or length of the police activity increases." *United States v. Wright*, 2021 WL 2310119, at *5 (N.D. Ind. June 7, 2021). Indeed, "[s]ubtle, and perhaps tenuous, distinctions exist between a *Terry* stop, a *Terry* stop rapidly evolving into an arrest and a *de facto* arrest." *United*

*States v. Bullock*, 632 F.3d 1004, 1016 (7th Cir. 2011). However, in determining the boundary between the two, it has long been recognized that "[a] seizure becomes an arrest when a reasonable person in the suspect's position would have understood the situation to constitute a restraint on freedom of movement of the degree which the law associates with formal arrest." *United States v. Ienco*, 182 F.3d 517 523 (7th Cir. 1999) (internal quotation marks omitted).

The undisputed material facts demonstrate that, at the moment Defendants approached Plaintiff, they were conducting an investigatory stop supported by reasonable suspicion. "Police officers may detain a suspect for a brief investigatory stop if they have a reasonable suspicion based on articulable facts that a crime is about to be or has been committed." *United States v. Swinney*, 28 F.4th 864, 866 (7th Cir. 2022) (internal quotation marks omitted). While reasonable suspicion requires more than a mere "hunch," it is a measure of suspicion less demanding than that required for probable cause. *United States v. Sokolow*, 490 U.S. 1, 7 (1989).

Defendants argue that they had reasonable suspicion for the stop for three reasons: (1) the information provided to them in the dispatch report, (2) Plaintiff's demeanor, which they describe as "defiant, verbally aggressive, and aggravated," Schulien Aff. ¶ 29 (ECF No. 15-1); and (3) the demeanor of Plaintiff's daughter, who "was not talking, did not move, appeared frightened and upset, and looked like she was about to cry," *id*. *See* ECF No. 16 at 3-4. These observations led Defendants to believe that Plaintiff had "committed a battery against the young female and that the female was possibly abducted." (*Id.*). In response, Plaintiff argues that the information Defendants received from dispatch is irrelevant to the reasonable suspicion inquiry, and that what matters is "what the officers actually saw and heard"—which they characterize as "a man and his daughter broken down, the man fixing the bike, and the two of them late for a Dr's appointment." (ECF No. 22 at 3).

The Court disagrees with the Plaintiff and finds that the dispatch report is highly relevant to the reasonable suspicion inquiry, as "[i]t is well established that reasonable suspicion for an investigative stop may be based on information supplied by another person, and need not be based solely on a police officer's personal observation." *United States v. Jeanes*, 2016 WL 11281168, *5 (N.D. Ind. Nov. 29, 2016) (citing *Adams v. Williams*, 407 U.S. 132 (1972)). When information supplied by another person forms the basis for an investigatory stop, the question becomes whether that information was sufficiently reliable to provide the officers with reasonable suspicion. *See Adams*, 407 U.S. at 147.

The Seventh Circuit's opinion in *United States v. Drake*, 456 F.3d 771 (7th Cir. 2006) is instructive in determining the reliability of the dispatch report in this case. In *Drake*, a plaintiff challenged a traffic stop, arguing that a 911 call reporting an emergency situation did not provide defendant police officers with reasonable suspicion. The court upheld the stop, stating that the Seventh Circuit will "presume the reliability of an eyewitness 911 call reporting an emergency situation for purposes of establishing reasonable suspicion, particularly when the caller identifies herself." *Id.* at 775. Because the 911 call in that case reported an immediate threat to public safety and provided sufficient details to allow the officers to identify the suspects, the court presumed its reliability. *Id.* And because the police, upon locating the subject of the report, were not confronted with any reason to doubt the report, the presumption remained intact. *Id.*

The facts here are remarkably similar. Here, as in *Drake*, a caller, whose reliability was untested but who identified himself, contacted the police department dispatch center to report an immediate emergency situation—a man behaving "really aggressive[ly]" and "ripp[ing]" a bag off of a girl to the point he "almost knocked [her] over." (Burton Aff. ¶ 4 (ECF No. 15-2)). The caller specifically identified the two individuals by gender, location, and by the fact that they had both a

bicycle and electric scooter with them, thereby providing sufficient details to allow Defendants to locate the subjects of the call. (*Id.*). When Defendants located Plaintiff and his daughter, they were not confronted with any reason to doubt the report—leaving the presumptive reliability of the call intact. This is enough to establish reasonable suspicion for the officers to stop and investigate Plaintiff to determine whether a crime had occurred (battery) or was otherwise in progress (abduction).

The Court also finds that Defendants had probable cause for Plaintiff's ultimate arrest. When probable cause exists for an arrest, it is generally an "absolute defense to claims under section 1983 against police officers for an allegedly unreasonable seizure, whether a false arrest or a wrongful pretrial detention." *Norris v. Serrato*, 761 F. App'x 612, 615 (7th Cir. 2019). Probable cause exists when "the totality of the facts and circumstances known to the officer at the time of the arrest would warrant a reasonable, prudent person in believing that the arrestee had committed, was committing, or was about to commit a crime." *Abbott v. Sangamon Cnty.*, 705 F.3d 706, 714 (7th Cir. 2013).

The crime Defendants believed Plaintiff was committing here was a violation of Indiana Code § 34-28-5-3.5, which states that a person stopped on suspicion of an infraction or ordinance violation commits a misdemeanor by refusing to give his name, address, and date of birth. As explained above, Defendants had reasonable suspicion to stop Plaintiff on the belief that he may have committed battery. Pursuant to Indiana law, therefore, Defendants were entitled to request Plaintiff's name, address, and date of birth.

In *Hiibel v. Sixth Judicial District Court of Nevada*, 542 U.S. 177 (2004), the Supreme Court held that a plaintiff's violation of a Nevada law criminalizing refusal to provide identification provided defendant officers with probable cause for that plaintiff's arrest. So long as

the request for identification is reasonably related to the circumstances justifying the stop, the court explained, an officer may arrest a suspect for failure to identify himself. *Id.* at 188. The Court finds that the request for identification here, like that in *Hiibel*, was "reasonably related in scope to the circumstances which justified the stop,"—the suspicion that Plaintiff may have engaged in battery against the child he was with—and therefore finds that the request and Defendants subsequent arrest for failure to provide identification in compliance with Indiana Code § 34-28-5-3.5 did not contravene the guarantees of the Fourth Amendment. *See id.* at 189.

The Court grants summary judgment in favor of Defendants on Plaintiff's claim for unlawful arrest.

**2. Excessive Force**

"[T]he Fourth Amendment prohibits the use of excessive force during the execution of a seizure." *Jacobs v. City of Chicago*, 215 F.3d 758, 773 (7th Cir. 2000). Excessive force claims are analyzed under the Fourth Amendment's "objective reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 395 (1989). Whether the use of force is objectively reasonable under the Fourth Amendment depends on the totality of the circumstances, which includes the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of the officers or others, and whether he was actively resisting or evading arrest. *Id.* at 396.

In his Complaint, Plaintiff alleges that Defendants used excessive force against Plaintiff when they "beat[] [him] with kicks and elbows while shouting obscenities." Compl. ¶ 16 (ECF No. 4). The body camera footage clearly contradicts this allegation. The force used against Plaintiff is visible from 4:55 to 5:45 on Officer Schulien's body camera video, and from 1:46 to 2:36 on Officer Burton's body camera video. On a motion for summary judgment. the Court must "view the facts and draw reasonable inferences in the light most favorable" to the non-moving party.

*Scott v. Harris*, 550 U.S. 372, 378 (2007). "But when parties tell two different stories, 'one of which is blatantly contradicted by the record,' we 'should not adopt that version of the facts.'" *Pryor v. Corrigan*, 124 F.4th 475, 483 (7th Cir. 2024) (quoting *Scott*, 550 U.S. at 380). Upon review of the footage, the Court finds that the record clearly contradicts Plaintiff's assertion that Defendants "beat" him.

To the extent that Plaintiff means to argue that Defendants' decision to grab Plaintiff, take him to the ground, and handcuff him—without beating or kicking him—was excessive force, the Court disagrees. The record is clear that Plaintiff was refusing to provide identification or to otherwise cooperate with the officers. *See* Schulien Video at 2:32-3:39. Defendants repeatedly asked Plaintiff to identify himself during a period of two and a half minutes before they decided to physically restrain him. (*Id.* at 2:32-4:55). Plaintiff admits that he had two visible knives. (Pl. SOMF ¶ 16). Plaintiff has not offered any case law with similar facts to support his contention that Defendants' behavior in taking him to the ground and handcuffing him constituted excessive force, given the circumstances of the encounter. Plaintiff also has not complained that the handcuffs were too tight or that he was injured by Defendants. The Court concludes that Plaintiff has not met his burden to provide facts demonstrating that Defendants used excessive force against him. Therefore, summary judgment is granted in favor of Defendants on Plaintiff's Fourth Amendment claim for excessive force.

**B. First Amendment**

Plaintiff claims that Defendants retaliated against him for video recording them by "advanc[ing] upon him and us[ing] excessive and unreasonable force." (ECF No. 22 at 4-5).

To make a prima facie case of First Amendment retaliation on summary judgment, a plaintiff must show that: (1) he engaged in activity protected by the First Amendment; (2) he

suffered a deprivation that would likely deter First Amendment activity; and (3) the First Amendment activity was at least a motivating factor in the police officer's decision. *Thqyer v. Chiczewski*, 705 F.3d 237, 251 (7th Cir. 2012). "If a plaintiff makes out a prima facie case of retaliation, and the defendant then identifies non-retaliatory grounds that were sufficient to provoke the adverse consequences, the burden returns to the plaintiff to show pretext." *Schukar v. Kenosha Cnty.*, 183 F.4th 508, 513 (7th Cir. 2026) (internal quotation marks omitted).

Defendants argue that Plaintiff cannot make out either the deprivation or the motivating factor components. *See* ECF No. 16 at 9-10. The Court agrees. First, as explained above, Plaintiff has not shown that Defendants used excessive force against him, thereby failing to satisfy the deprivation element of his retaliation claim. Second, the Court finds that Plaintiff likewise cannot satisfy the causation component of his claim. The only favorable evidence Plaintiff points to in an effort to raise an inference of the officers' improper motivation is Plaintiff's own belief that Defendants "became angry" when he got out his cell phone and started to record, as well as the contention that it was "only after he started to video record" that the officers "advance[d] upon him and use[d] excessive and unreasonable force." (ECF No. 22 at 4-5). This personal belief is insufficient to create a dispute of material fact as to whether Defendants engaged in retaliation in violation of the First Amendment. *See Clark v. DeKalb Cnty. Sheriff*, 2020 WL 6455057, at *9 (N.D. Ind. Nov. 3, 2020) (finding a plaintiff's belief that defendant officer was "angered" by his refusal to answer questions to be "tenuous evidence" such that no reasonable jury could find that the officer had engaged in retaliation)). Further, the video evidence clarifies that Defendants did not touch Plaintiff until over a minute after he started filming, weakening Plaintiff's assertion that the handcuffing was in direct response to his recording.

Summary judgment is granted in favor of Defendants on Plaintiff's First Amendment retaliation claim.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment (ECF No. 15) is GRANTED. Judgment is hereby entered in favor of Defendants.

SO ORDERED on September 28, 2026.

s/ *Holly A. Brady*
CHIEF JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT COURT